JODI LINKER
Federal Public Defender
Northern District of California
JOHN PAUL REICHMUTH (CASBN 194844)
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:  (510) 637-3500
Facsimile:   (510) 637-3507
Email:         john_reichmuth@fd.org

Counsel for Defendant EVERETTE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | **Case No.:** CR 22–447 JSW |
|---|---|
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| v. | |
| DARELL EVERETTE, | |
| Defendant. | |

**I.    INTRODUCTION**

Mr. Everette is a 23-year-old man who might have been referred to the Conviction Alternatives Program, but he does not have a significant enough ongoing drug problem or need for drug treatment to place him in the correct quadrant of service population, High Risk/High Needs, that our CAP program is designed for. Because he technically does not qualify for CAP but would benefit significantly from a program like CAP, the defense requests that his sentencing be deferred 12 months, and that the Pretrial Services Agency be directed to place Mr. Everette into intensive and structured programming similar to CAP, including individual and group counseling on criminal thinking and Life Skills (e.g. Dolan Groups: Courage to Change, Keeping It 100), and a tailored

approach to pushing Mr. Everette to address health, employment, housing, sobriety, and lawful/pro-social thinking and behavior.

Mr. Everette's case is right for such an approach. He is scheduled for surgery to remove his colostomy bag in March 2024. His offense involves straightforward possession of a firearm with no assaultive or drug-related behavior. In fact, at the time of the possession, Mr. Everette was still recovering from his wounds and was hardly able to walk. The government and Probation Officer are seeking only 27 and 24 months respectively, so it would not be a risky or major change of course to see how he performs in a CAP-like program. The defense is not seeking a sentence at this juncture and respectfully submits that given all of the circumstances, including the later sentencing dates of the co-defendants, the pending surgery, and the prospect of successful intensive programming, deferred sentencing would provide the Court with better information, and Mr. Everette with better programming, upon which to base the sentencing decision.

## II.     Legal Framework

The Court is aware of the directives of *United States v. Booker*, 543 U.S. 220 (2005), and the sentencing factors listed in 18 U.S.C. § 3553(a). The Court must consider, among other factors, the advisory sentencing range, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(1), (a)(4) and (a)(6). The factors detailed in § 3553(a) assist the Court in fulfilling the mandate to make "an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." *United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985). "The overarching statutory charge for a district court is to 'impose a sentence sufficient, but not greater than necessary," to serve the statutory purposes of sentencing. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (quoting § 3553(a)).

When the sentencing factors relevant here are considered and weighed, either a deferred sentencing or a substantial variance is called for.

## III. FACTUAL BACKGROUND

### A. Mr. Everette' Background

Though he sees it through unreasonably rosy glasses, Mr. Everette's background is troubling and sets the tone for his arrival before this Court. His father was a heroin addict, though he remained in Mr. Everette's life and treated him well. Mr. Everette's mother likewise did not mistreat him, either, but he was a ward of the State of California at age 12. PSR ¶ 38. He began marijuana use at 15 and developed polysubstance use involving promethazine, ecstasy, and heroin. PSR ¶ 63. He took special education classes in Junior High. PSR ¶ 64. He has very little employment history. PSR ¶ 64.

Mr. Everette also suffers from Post-Traumatic Stress Disorder. He grew up in an area "plagued by criminal activity and narcotics use." PSR ¶ 57. Like other defendants before this Court, but unlike well-resourced middle schoolers, his friends and family members were occasionally murdered starting when he was 13. Mr. Everette's conduct in this case occurred in September 2022. In July of that same year, he and another man were the victims of an attempted double homicide. The other man died, and Mr. Everette was severely wounded:

> Mr. Everette suffered internal bleeding and continues to have bullet fragments lodged in his stomach area. He feels intermittent pain and discomfort in his stomach, which can be more pronounced while walking. The defendant has required a colostomy bag for more than the past year. Mr. Everette provided medical documentation noting he is scheduled for an additional surgery to have the bag removed on March 20, 2024. PSR ¶ 60.

Mr. Everette has barely survived his first 23 years of life.

This brief summary of Mr. Everette's history strongly indicates the potential benefits to him and the community of a collaborative court. The problem is that Mr. Everette's need for drug treatment is not strong enough to qualify him for the Conviction Alternatives Program.[1] Defense counsel was informed by the Pretrial Services Agency on August 29, 2023:

> I previously reviewed this case with our CAP officer. She indicated that he meets the <u>risk</u> criteria, but he did not have the qualifying <u>need</u> criteria. If the parties are interested in an alternative sentencing plan, something along the lines of a deferred judgment would be best for him. There is some talk about the LEADS program growing to include high-risk cases like Mr. Everette, but I don't think the Court has finalized any plans as of yet." Email Exchange between Counsel and Pretrial Services Officer, Ex. A.

This is not offered as a recommendation for deferred sentencing by the Pretrial Services Agency in this case. That agency has not been asked to take a position on deferred sentencing in this case. But the exchange does show the context of the CAP discussion, and the reason why CAP has not been recommended. It also shows the optional practice in this district of deferred sentencing when CAP is not technically available. Mr. Everette is a natural choice for an evidence-based deferred sentencing approach, and there is precedent for deferred sentencing in cases like this one.

### B.     The Offense Conduct

A review of the offense conduct set forth in the PSR shows that out of 16 paragraphs (¶¶ 7-23), Mr. Everette is mentioned in three of them. They state that he was found lying on the floor in a home that was the subject of a search warrant, where none of the information leading to the warrant referenced him. He could not walk towards the officers due to injury. His DNA was found on one firearm in the residence after he had previously been sentenced to a four-year prison sentence in the past for Receive/Etc. Known Stolen Property in Los Angeles County Superior Court in Torrance, California. He was alleged to be "associated" with the gang connected to the residence. PSR ¶¶ 19, 21, 23.

Supporting the defense's call for a specially tailored intensive intervention for this young man is the fact that Mr. Everette's first case occurred when he was 12 years of age. PSR ¶ 38. Mr. Everette thereafter stole and broke into vehicles, eventually garnering a four-year prison sentence. PSR ¶ 49.

## IV.   SENTENCING RECOMMENDATION

### A.     The Sentencing Guidelines and Recommendations of the Parties

According to the Probation Officer, based on a total offense level 17 and criminal history category III, the correct advisory guidelines imprisonment range is 30-37 months prison. The Government argues that the Total Offense Level should be 19, with a resultant range of 37-46 months prison, based on the argument that Mr. Everette constructively or jointly possessed other firearms in the building where he was arrested, and thus the specific offense characteristic for the offense involving three to seven firearms under USSG §2K2.1(b)(1) applies. The Probation Officer does not agree. The Defendant reserved the right in the plea agreement to argue that that adjustment does not

apply. Thus, the Guidelines are disputed. Regardless of the correct range, the government has agreed to request a sentence no greater than 27 months imprisonment.

The defense agrees with the Probation Officer that no adjustment is justified for any firearm not directly tied to Mr. Everette. The government argued in its objection to the Draft PSR that joint possession of the firearms in the house could be based on their reasonably foreseeable possession in jointly undertaken criminal activity, namely gang membership. But one cannot conclude from the bare facts in the PSR that Mr. Everette was involved in a criminal conspiracy with his co-defendants or that he had any knowledge of, access to, or intention to control any other firearm in that house. The Presentence Report does not even establish that Mr. Everette was a member of a gang. It alleges only that he was an associate.

And even if he were a member of a gang, that is different from a co-conspirator as to these firearms. There are no other facts or circumstances demonstrating his purpose for being at the home, or any recent gang activity by him. Nor should the firearm he possessed be attributed to others. It appears that he had a firearm for personal protection after having been shot only two months prior. He could not walk due to his injury. There appear to be few if any cases supporting the government's interpretation. On the contrary, findings of an actual conspiracy related to the offense of conviction itself appear to be required. *See United States v. Longstreet,* 603 F.3d 273, 279 (5th Cir. 2010) (reversing adjustment based on number of guns absent particularized findings as to involvement in conspiracy at relevant time); *United States v. Hammond*, 201 F.3d 346, 351 (5th Cir.1999) (requiring clear findings of reasonably foreseeable acts within the scope of a conspiracy to hold a defendant accountable for third-party conduct); U.S.S.G. § 1B1.3(a)(2) (attributing to defendant "all reasonably foreseeable acts and omissions of others in furtherance of ... the same course of conduct or common scheme or plan *as the offense of conviction*.") (emphasis added). The Probation Office has correctly assessed the guidelines in this case.

### B. Numerous Factors Weigh in Favor of Deferred Sentencing

Mr. Everette is the paradigm case for a collaborative court response. He is young, under-educated, and under-employed. He has a poly-substance abuse history, potential learning challenges, and significant psychological and physical traumas to address. He comes from a home that also faced

challenges. He has only been sentenced to prison once in his life, but he has had police contacts since he was a child. Though some violent conduct has been alleged against him, he does not have a past history of violent convictions. The current offense does not involve violent conduct. He has had some issues while on pretrial release but has also experienced a good deal of success. He has shown that he is able to maintain contact with his Pretrial Officer and follow the program set for him. He has medical issues that need to be addressed. He is not facing a particularly lengthy prison sentence.

Mr. Everette's youth makes his childhood recent and suggests prompt intervention. It was only eight years ago that he began smoking marijuana as a 15-year-old. It was 10 years ago that he first experienced the loss of friends to gun violence as a middle school student. Such issues should be addressed sooner rather than later, as scientists increasingly observe connections between childhood trauma like Mr. Everette's and neurological deficits. Anda, Felitti, et al., *The enduring effects of abuse and related adverse experiences in childhood: A convergence of evidence from neurobiology and epidemiology*, Eur. Arch. Psychiatry Clin. Neurosci. 2006 April; 256(3): 174–186,[1] (concluding that "The graded relationship of the ACE score to 18 different outcomes in multiple domains theoretically parallels the cumulative exposure of the developing brain to the stress response with resulting impairment in multiple brain structures and functions.").

Mr. Everette has clearly suffered from several ACE's. He is only now coming out of a very traumatic childhood. His polysubstance abuse and impulsive decisions are likely a physiological result of that trauma. He requires a good cognitive program to help him deal with these problems, but he has shown that he can stay clean, follow Pretrial Service's rules, and attend to his medical appointments. Mr. Everette would certainly benefit from, and be a real asset to, the CAP or LEADS programs, but he technically does not qualify. A deferred sentencing approach adopting the same key interventions as CAP or LEADS would best serve all of the goals of sentencing.

With the right interventions, as Pretrial Release has shown, Mr. Everette is not likely to recidivate, so community protection and specific deterrence do not require prison. Nor would parity be advanced by putting into prison the type of defendant who should naturally be assessed for CAP or

---

[1] Available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3232061/

LEADS. Finally, deterrence of the public is not compromised by leniency in this case: a non-custodial sentence would involve a rigorous cognitive behavioral program that would likely be more difficult than a prison sentence. For Mr. Everette's peers to see him succeed in such a program would arguably send an even more powerful message of deterrence than prison. The sentencing factors clearly militate for deferred sentencing with features similar to this district's successful evidence-based collaborative courts.

## V.  CONCLUSION

Based on the foregoing, the defense respectfully requests that the Court defer judgment for 12 months and Order that Mr. Everette be placed in a structured program of rehabilitation.

Dated:   February 20, 2024                    Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

  /S/
JOHN PAUL REICHMUTH
Assistant Federal Public Defender

# EXHIBIT A

| | |
|---|---|
| **From:** | Joshua Libby |
| **To:** | John Reichmuth |
| **Subject:** | RE: Everette |
| **Date:** | Tuesday, August 29, 2023 4:42:09 PM |

Hi John,

I previously reviewed this case with our CAP officer. She indicated that he meets the <u>risk</u> criteria, but he did not have the qualifying <u>need</u> criteria. If the parties are interested in an alternative sentencing plan, something along the lines of a deferred judgment would be best for him. There is some talk about the LEADS program growing to include high-risk cases like Mr. Everette, but I don't think the Court has finalized any plans as of yet.

Josh Libby
U.S. Pretrial Services Officer

---

**From:** John Reichmuth
**Sent:** Tuesday, August 29, 2023 4:24 PM
**To:** Joshua Libby
**Subject:** RE: Everette

What do you think about re-evaluating him for ATIP per our email exchange below?

John Paul Reichmuth, A.F.P.D.
Office of the Federal Public Defender
Suite 1350N – 1301 Clay Street
Oakland, CA 94612
Main:  510-637-3500

---

**From:** Joshua Libby
**Sent:** Wednesday, March 22, 2023 11:16 AM
**To:** John Reichmuth
**Subject:** RE: Everette

He reported using Gabapentin and Hydromorphone for pain, but its prescribed. He's never mentioned using promethazine. Its an odd drug to abuse as its basically an antihistamine.  That being said, I can follow-up with him about it. I plan on trying to see him tomorrow.

Josh Libby
U.S. Pretrial Services Officer

**From:** John Reichmuth
**Sent:** Tuesday, March 21, 2023 10:59 AM
**To:** Joshua Libby
**Subject:** RE: Everette

Understood.  I think he was using promethazine regularly.  Is that something that might increase his needs assessment?


John Paul Reichmuth, A.F.P.D.
Office of the Federal Public Defender
Suite 1350N – 1301 Clay Street
Oakland, CA 94612
Main:  510-637-3500
Cell:  415-517-8647


**From:** Joshua Libby
**Sent:** Tuesday, March 21, 2023 10:43 AM
**To:** John Reichmuth
**Subject:** RE: Everette

Hi John,

Apologies for the delayed response. In terms of CAP eligibility, we dive into the defendant's background to determine whether a defendant has high risk/high need factors. In Mr. Everette's case, he absolutely has high risk factors, but very few need factors. In terms of need, the focus is untreated mental health issues and/or serious substance abuse issues. Mr. Everette did report regular use of marijuana, but CAP team won't accept marijuana use alone as a qualifying factor.  We also look at the defendant's criminal record in an attempt to validate risk/need factors. A good indication of high needs would be regular drug/paraphernalia possession arrests and other crimes generally committed to support a drug habit and/or demonstrating mental health issues. Mr. Everette's criminal record does not seem to indicate someone suffering from either issue. If the parties are trying to find a sentencing alternative, a deferred judgment-type situation might be a better option.

Josh Libby
U.S. Pretrial Services Officer


**From:** John Reichmuth

**Sent:** Friday, March 17, 2023 4:25 PM
**To:** Joshua Libby
**Subject:** RE: Everette

OK thanks, we will get back to you on the mod. I am not involved in SF ATIP. What would be the disqualifying factor?

Best,
JPR

**From:** Joshua Libby
**Sent:** Friday, March 17, 2023 3:31 PM
**To:** John Reichmuth
**Subject:** RE: Everette

Hi John,

Unfortunately, Mr. Everette doesn't meet the criteria for CAP/ATIP eligibility. In terms of his home confinement, I would fully support reducing his restriction to a basic curfew with an eye toward getting him off completely once he has demonstrates continued compliance. The only complicating issue is the recent positive drug test. I can't really recommend such a modification until that's cleared-up. My plan is to visit and test him again next week, and if he's negative, I'd be okay with supporting a modification.

Josh Libby
U.S. Pretrial Services Officer

**From:** John Reichmuth
**Sent:** Friday, March 17, 2023 10:44 AM
**To:** Joshua Libby
**Subject:** Everette

Hi,

Two questions: how do you view Everette in terms of ATIP possibilities? Has there been a preliminary screen? Also, would you be opposed to reducing his restrictions re: Home confinement, so he can look for work and hopefully begin working?

Best,

John Paul Reichmuth, A.F.P.D.
Office of the Federal Public Defender
Suite 1350N – 1301 Clay Street

Oakland, CA 94612
Main:  510-637-3500
Cell:  415-517-8647