ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

LINA PENG (NYBN 5150032)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7200
   FAX: (415) 436-7027
   Lina.Peng@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>DARELL EVERETTE,<br><br>    Defendant. | NO. CR-22-447 JSW<br><br>UNITED STATES SENTENCING MEMORANDUM |

The government recommends a sentence of 27 months, followed by three years of supervised release. The defendants in this case are members and/or associates of the WestMobb Mobbstarz criminal street gang in San Francisco. They are charged with being felons in possession of firearms and ammunition—stemming from a large cache of weapons seized from a stash house of common access. Everette's possession of the firearm and ammunition to which he pleaded guilty is more serious than a singular instance of possession by one individual. Rather, his conduct should be viewed in the context of the search that uncovered numerous weapons and ammunition and his association with his co-defendants.

## BACKGROUND

### I.   Offense Conduct

1. Co-defendant Emonie Bailey had been a fugitive, having absconded from post-release supervision out of Alameda County after a conviction for being a felon in possession of a loaded firearm. A bench warrant issued for him on January 21, 2022.

Law enforcement attempted to locate Bailey by searching his Instagram account. Among other things, the search results revealed that on March 11, 2022, Bailey sent a video depicting a firearm in a vehicle on the 100 block of Northridge Road, San Francisco to Damare Hollis, affiliated with the WestMobb Mobstarzz gang. The video shows Bailey raising a firearm into camera view and pointed it outside the backseat window. Bailey sends the same video to defendant Harold Hollis. Hollis responds: "Y'all aint come get me bitch," Bailey says "I'm to da neck," and Hollis replies "You got a hottie." WestMobb is rivals with Big Block/Harbor Road, which claims as territory the 700 block of Kirkwood and the 100 blocks of Harbor Road, Kiska, and Northridge Roads, and the 1500 block of Kirkwood. This rivalry has resulted in numerous shootings and deaths or injuries. In other words, the video shared by Bailey with Hollis showed him in rival gang territory with a firearm—presumably an act of disrespect towards his rivals. The Instagram search also revealed a photograph post on April 12, 2022—geolocated in Memphis, Tennessee—of Bailey holding a rifle with another unknown male holding a firearm.

Additional investigation into Bailey revealed that he was frequenting two locations, including 7036 MacArthur Blvd, Apt. #9, Oakland CA—an address with Internet service registered to Hollis—and a second location in Fairfield.

On September 15, 2022, law enforcement conducted surveillance at the MacArthur Blvd location and observed Bailey entering the coded gate by inputting a code.

On September 15, 2022, San Francisco executed a search warrant at the MacArthur Blvd location. At 05:40, they observed Bailey and the defendant Darell Everette exit a vehicle and walking up the stairs to 7036 MacArthur Blvd. The search warrant was executed at approximately 05:45—Hollis, Everette and a female were inside.

The items found inside the MacArthur Blvd residence included the following:

- 1 black 9 mm Glock semi-automatic pistol, loaded with 16 rounds of ammunition
- 1 camo AK-47 style semi-automatic rifle

- 1 black 5.56 x 45 mm AR-15 style semi-automatic pistol, with no serial number, and loaded with 25 rounds of ammunition
- 1 black Durkin AR-15 semi-automatic pistol loaded with 26 rounds of ammunition
- 1 Ruger 57 semi-automatic pistol loaded with 20 rounds of ammunition
- 1 black Anderson AR-15 semi-automatic pistol loaded with 31 rounds of ammunition
- 100 round drum magazine
- 1 Glock 10 magazine, 1 rifle magazine, 1 high-capacity .45 magazine
- Hundreds of rounds of ammunition of various caliber

DNA testing revealed that each of the defendants were a likely contributor to the respective weapons that they have been charged with in the Indictment. Specifically, there was very strong support for Everette to be a contributor to the grip of the Glock 19 semi-automatic pistol. The pistol was found inside of an oven:



A second location located in Fairfield was also searched. There were five paper range targets in the garage (with apparent bullet holes), three cell phones, and a Lowe's card with Bailey's name and a medication receipt in the name of Darell Everette.

NIBIN hits were returned on two of the firearms. Based review of the NIBIN database, the black Durkin AR-15 semi-automatic pistol, with no serial number, was discharged on August 13, 2022, in the Bayview district of San Francisco. When officers responded to the scene for a ShotSpotter activation

for 30 rounds, high capacity, they located multiple fired casings in the middle of the street in front of 31 Osceola Lane.  Nine vehicles were damaged from gun fire, with shattered windows, bullet holes, or other damage to the exteriors.  There was a large hostile crowd gathered and two females were actively fighting; no arrests were made.

Based on review of the NIBIN database, the 5.56 x 45 mm caliber AR-15 style semi-automatic pistol with no serial number (on which Bailey was found to have contributed DNA), was discharged leaving behind shell casings that were found on April 14, 2022, in the area of Anthony Chabot Regional Park area of Oakland.  Additionally, on April 27, 2022, spent shell casings matching the firearm were found in the same area while police were installing surveillance cameras due to increased gun fire there.

## II.     Criminal History

Although the defendant is only 23 years old, the PSR demonstrates that he has already committed numerous crimes.  Concerningly, these crimes involve real victims and the potential for actual violence because of the use of firearms.

As set forth more fully in the PSR, sadly, the defendant's criminal conduct began when he was 12 years old, involving the possession of a firearm.  PSR ¶ 38.  After he committed taking vehicle without owner's consent, receiving stolen property, and second degree robbery.  PSR ¶¶ 39-40.  Notably, as a juvenile, the defendant received terms of probation for all of these crimes.  *Id*.  The most serious of these appeared to be a carjacking in 2017, when the defendant along with three other individuals, held a victim at gunpoint and stole their car, cell phone, and wallet.  *Id*. ¶ 41.  During the term of probation he received for the carjacking, the defendant committed new criminal conduct, including the 2018 car burglary described below.  *Id*.

As an adult, the defendant's crimes did not abate.  In 2018, he received 30 days jail and 24 months probation for a burglary of a car, along with two additional individuals.  *Id*. ¶ 42.  Then while on probation, in 2019, he committed second degree burglary of vehicle, for which he received 4 years of prison time.  *Id*. ¶ 43.  The PSR notes several arrests pertaining to a similar pattern of conduct of burglaries of cars and residences that did not result in convictions.  *Id*. ¶¶ 48-50.

Although defendant receives any additional criminal history points under the Guidelines, it is notable that at the time he committed the instance offense, he was still on probation from a prior offense,

continuing the pattern of reoffending. *Id.* ¶ 43.

Finally, of relevance, Everette was initially granted pre-trial release after he was arrested for the instant offense. On October 3, 2023, Everette was arrested after a report of a domestic violence incident. According to the police report, Everette, during a physical altercation, grabbed the victim's hair, bit the victim on the right side of her neck, and dragged her by her hair back inside his house. He was arrested an detained, and the case was later dismissed. On December 19, 2023, Everette made an initial appearance in this Court for violating his conditions of pre-trial release. He was remanded into custody pending an available bed in the Residential Reentry Center. He was released there on December 28, 2023. PSR ¶ 6.

### III. Guidelines Calculation

The government withdraws its objection to the draft PSR that two additional points should be added for 3-5 firearms involved in the offense, for defendant Everette. Accordingly, the government is in agreement with the PSR that the applicable Guidelines range for the offense is 30 to 37 months, corresponding to total offense level 17 and criminal history category III. Its recommendation, which is below the low-end of the Guidelines range of 27 months, remains the same.

## DISCUSSION

### I. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991. In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), to include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

## II.   The Government's Recommendation Achieves the Statutory Sentencing Goals

The government's sentencing recommendation of 27 months is necessary but no greater than to achieve the statutory purposes of sentencing.

First, as noted above, this particular felon in possession offense goes beyond a single individual possessing one firearm at a particular point in time. Although the government is no longer seeking the two-point enhancement for 3-7 firearms under the Guidelines, the Court can still consider the nature and circumstances of the offense. That is, six firearms were found stashed together possessed by at least three different individuals who associate together and are members/associates of a criminal street gang. This elevates the seriousness of the offense. The sheer amount of firearms and ammunition located is concerning, and in particular because they were possessed by individuals with lengthy criminal histories. The government acknowledges that among the three co-defendants charged, it appears that Everette has the least amount of serious criminal conduct. However, there is no question that Everette was associating the co-defendants and, as described further below, has a history of committing joint criminal activity.

Second, although Everette is young at 23 years old, he is of course already a felon. Moreover, his history demonstrates a pattern of unabated criminal conduct, involving him committing crimes with other groups of people. Aside from the criminal conduct itself, he has repeatedly committed more crimes—of a similar nature—when he is still on probation from a prior offense. These offenses often have real victims and present a danger to the community. This pattern of continued criminal activity demonstrates that Everette lacks respect for the rules of the court and this prior terms of imprisonment he has received—including a significant state sentence of 4 years—have not achieved specific deterrence. While on pre-trial release for this offense, he was involved in a domestic violence incident. Although those charges were later dismissed, the police report nevertheless documents troubling conduct by Everette when he is aware he is being closely supervised in his federal case. He was ordered by the magistrate court to an RCC after that arrest.

Put differently, aside from his age of 23, there is little reason to believe that Everette is an appropriate candidate for diversion through CAP/LEADS. Those programs are extremely resource intensive and require a high level of commitment and willingness to change from the participants. Everette has not demonstrated—through his criminal history and his arrest while on pre-trial release—that he would be a viable candidate. His criminal history shows instead that he continued to commit crimes, even when on a term of probation and even when having previously been given terms of probation over custodial sentences. In terms of rehabilitation, if Everette is serious, there is no reason he cannot take advantage of the abundant resources that the federal system has to offer through the Probation department once he has completed his sentence. Indeed, some of these services were available to Everette as part of conditions of pre-trial release.

Finally, the Court should consider the sentencing factor of avoiding unwarranted sentencing disparities. There remains two more defendants to be sentenced in this case. As noted above, based on their criminal histories and differing levels of involvement in this case, the government intends to recommend higher terms of imprisonment for Bailey and Hollis. Their respective plea agreements cap the government's recommendations at 42 months and 50 months. Accordingly, the government's recommendation for Everette accounts his relatively less serious criminal history and his provable involvement in the instant offense.

## **CONCLUSION**

The government recommends that the Court sentence the defendant to a term of imprisonment of 27 months, followed by 3 years of supervised release.

DATED: February 20, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

_____/s/_____
LINA PENG
Assistant United States Attorney